Yes, your honor. Good morning. Morning. Chief Justice Gregory, Judge Thacker, Chief Judge Gregory, Judge Thacker, Judge Harris. I'm John Corson from the Wake Forest Appellate Advocacy Clinic. Under Local Rule 46A, it's my pleasure to introduce the two student counsel who are here today. First, Chelsea Phelps, who will address the procedural issues, and Jacqueline Winters, who will address the merits issue. Thank you very much. Thank you. Ms. Phelps? May it please the court. My name is Chelsea Phelps, and I represent Appellate Mr. Brown in this matter before the court today. This court should reach the merits of Mr. Brown's ex post facto claim because the Virginia Supreme Court's application of the statute of limitations procedural ground in Mr. Brown's case was not adequate. And thereafter, his filing was, in fact, timely. Both of Mr. Brown's petitions were filed within the applicable one year statute of limitations. His ex post facto claim that my co-counsel will discuss accrued when the Virginia Parole Board revoked his mandatory parole and more than 23 years of good time credit in August of 2015. His state petition was filed less than one year later in compliance with Virginia code, which states a right of action shall be deemed to accrue from the date the injury is sustained. In Mr. Brown's case, that injury was sustained August of 2015, the date of parole revocation and loss of good time credit. Before August 3rd of 2015, Mr. Brown faced only the possibility of that revocation and loss. And with their dismissal, the Virginia Supreme Court required him to be cognizant of a harm that had not yet occurred. The ground on which the Virginia Supreme Court's order was based is not an adequate and independent state procedural ground. Because it is — because its procedural — excuse me, because procedural default is an affirmative defense, according to Woodfelt v. Maynard, a decision in 2017 by this court, the state bears the burden to establish the adequacy of a state procedural rule, a burden that has not been met by the state in this case. Because the Supreme — the Virginia Supreme Court's accrual finding, based on the statute of limitations procedural rule — Are you asking us to question the state court's application of its own statute of limitations? Your Honor, we ask instead that the rule on which the decision was based is not adequate, not that their application was incorrect. And why is it not adequate? Your Honor, according to Walker v. Martin, a 2011 Supreme Court case, to be adequate, a state law ground must be both firmly established and regularly followed. In Mr. Brown's case, we focus on the regularly followed piece of that requirement. In that same case, the — the Court stated that if applied infrequently, unexpectedly, or freakishly, a state procedural ground may discriminate against the Federal rights asserted and therefore be inadequate. And which one are you saying this was, freakish? We focus on freakish and the unexpected or infrequency of the application. In regards to infrequency, according to Wood, Volk v. Maynard, a 2017 case decided by this Court to determine consistency, the inquiry is into cases that are procedurally analogous. Mr. Brown relies on the most procedurally analogous case available to him, a case to which the State of Virginia had no reply in their brief. The — the case on which Mr. Brown relies is the 2012 Virginia Supreme Court case decision Booker v. Director of Department of Corrections. That case states that the cause of action accrued when the circuit court entered an order revoking a previously suspended sentence and resuspending all but six years to be served concurrently. This case stands in contrast to Mr. Brown's case, in which the State found the action to have accrued before the Virginia Parole Board's order was entered in 2015, stating instead that his claim accrued in October of 2013 when he was released on parole. With this single non-procedurally analogous case, the Virginia Supreme Court's accrual finding is unexpected or freakish. The freakish component comes from that expectation for Mr. Brown to have filed a claim in 2013, based on a harm that did not happen until 2013. The question, how freakish can it be? The district court sort of came to the same conclusion. The federal district court also thought that this claim accrued in 2013. And I understand your arguments for why that doesn't seem on its face to be sensible. But, you know, that's what the district court thought. That's what the state court thought. It's not that freakish. I mean, how can it be so freakish if two — an entire Supreme Court and then the district court all came to the same conclusion? Your Honor, there is a bit of ambiguity in the Virginia Supreme Court order as to which specific claims they state accrued in 2013. I think the district court does tease things out a little bit more clearly. Well, what is your — are you suggesting that your — I took from the first part of your argument that you believe that the Virginia Supreme Court found the ex post facto claim untimely and that that was freakish. But now you're suggesting maybe the Virginia Supreme Court did not make that finding? The Virginia Supreme Court, based on what we can find in the order, seems to consider Mr. Brown's claims all as one, altogether. Right. And the petition is untimely. And then thereby finding that his petition was untimely instead of individually considering the ex post facto claim that we'll bring forth today. And then the district court — hopefully this will clear it up a little bit. So the district court, in considering a Supreme Court finding based in Pace v. DiGalelmo, a 2005 Supreme Court decision, when there are multiple habeas claims, should continue — should consider the statute of limitations on a claim-by-claim basis. I think that's something that — that the district court failed to do. In fact, even changing some of Mr. Brown's words, saying he was cognizant of the change in law at a time he wasn't. Can I just — I think I didn't frame my question right. Let me just ask you this. Is your reading of the Virginia Supreme Court order, which is short, that the Supreme Court of Virginia thought that the ex post facto claim was untimely? It's unclear, I think, to us what exactly — or which claims they refer to in that order. Because it is so brief, it's hard to tie any individual claim back to their language in the order. Okay. So is this an — I do think you start to raise this as a suggestion in your reply brief, although not your opening brief. But so you're — so you don't really have an answer to the question of what the Virginia Supreme Court did here. Yes, that's correct, Your Honor. It does seem quite vague based on their Supreme Court order entering the dismissal for Mr. Brown. Okay. Mr. Brown's federal timely — or federal filing was, in fact, timely, considering that the state ground is inadequate. His federal claim was told and ultimately filed less than one year after his state habeas petition was denied by the Virginia Supreme Court in accordance with the U.S. Code 2244. In summation, Mr. Brown asked that the merits of his ex post facto claim be heard here today because the Virginia Supreme Court's basis for untimeliness is not an adequate state procedural ground and his claim is therefore timely. Thank you, Your Honors. Thank you. May it please the Court. My name is Jacqueline Winters, and I also represent the appellant in this action, Demerick Brown. The issue in this case is whether Virginia's assertion of authority to resurrect completed sentences by revoking the good time credit that extinguished them violates the ex post facto clause. Demerick Brown completed serving a series of sentences for offenses he committed in the 1980s through a combination of both incarceration and earned good time credit. While he was serving his final sentence, Virginia revoked his mandatory parole and further punished him by revoking his good time credit. All of the good time credit that extinguished his prior sentences was resurrected, redefining his time served from complete to incomplete. This revocation, which occurred pursuant to a Virginia statute amended and a parole board policy applied after Mr. Brown's sentences, increased the measure of punishment attached to his crimes in violation of the ex post facto clause. Your Honors, the version of Virginia Code Section 53.1, in effect, at the time of Mr. Brown's convictions, under that version of the code, every inmate was to be released six months prior to the date of his final release. However, in 1994, the Virginia General Assembly amended that statute, stating that final discharge may be extended to require the prisoner to serve the full term imposed by the sentencing court that was unexpired at the time of parole. It further defined final discharge to disregard good conduct credit. Subsequently, in 1995, the Virginia Parole Board adopted a parole board policy that largely mirrored the statute of this language. It changed may to shall and was explicitly adopted pursuant to its authority under the new Code 53.1, Section 159. The effect of this statutory amendment and the new parole board policy was that the parole board would require prisoners who had previously completed sentences with the aid of good time credit to serve time that previously would have been considered completed under the old policy. Right. And what would you have us do with our 2000 case of Warren v. Baskerville, which seems to go directly against your position? Your Honor, Warren is distinguishable for three primary reasons. Although there are facial similarities between the Warren case and Mr. Brown's case, the two are categorically different. First, the inmate in Warren was serving one 8-year sentence, and he was challenging revocation of good time that occurred on an ongoing sentence. Here, Mr. Brown is challenging the revocation of good time credit on sentences that under the old law would have been deemed completed and extinguished under that old law. And the import of this change was recognized by the Eastern District of Virginia in 1999 in Woodley v. Department of Corrections. It recognized that for prisoners serving consecutive sentences, the 1995 change in the parole board policy and 94 change in the law meant that sentences that were – would have been considered fully served were not served in the eyes of the law. But, Counsel, I do understand how that distinction makes this particularly unfortunate for your client. I mean, it exacerbates the effect for your client, but I don't see how it addresses sort of the reasoning in Warren, which was that it really doesn't matter how this plays out because it's not the result of a legislative change. It's just an administrative change in policy, and that's just entirely outside the ex post facto clause. Your Honor, that's another point that makes this case distinguishable is that in Pugh v. United States from the Supreme Court in 2013, the court foreclosed this categorical distinction. You think that under current Supreme Court law, changes in administrative enforcement policies like this one now trigger ex post facto clause inquiries? Yes, Your Honor. Yes, Your Honor. In Pugh v. United States, the Supreme Court was unpersuaded by the government's argument that U.S. sentencing guidelines lacked the sufficient legal effect to implicate – But that was a different question. The question in that case was when is a discretionary policy treated as though it has the force of law for purposes of the ex post facto clause, but it wasn't a question about where did this change come from. Did it come legislatively? Did it come from a legislative delegation of rulemaking authority, in which case the ex post facto clause applies, or was it just an administrative change in enforcement, in which case it just doesn't apply, and that's what we held in Warren. Your Honor, the court in Pugh also stated that the presence of discretion does not displace the protections of the ex post facto clause. But that is a different question. The discretion – well, it doesn't matter. Sorry. I don't want to cut you off. The court – I would also like to point the court to United States v. Lewis from this court in 2010, which – in which this court similarly rejected the argument the ex post facto clause applies only to laws that bind rather than revise, holding that application of sentence – guidelines implicating sentences in effect at the time of sentencing rather than guidelines in effect at the time of offenses did, in fact, implicate and violate the ex post facto clause. So I guess what the question – let me try to frame this right. This policy, the new Virginia policy, let's say it's entirely mandatory. I think it is, right? It's a mandatory policy. If you – if your parole is revoked, we're going to make you serve all of your time as though you never had these good time credits. It is mandatory, right? It was discretionary, but the discretion did not exist prior to the change in the 1994 law. So the statutory language said prisoners may be required to serve. But the policy – Yes, the policy did say shall. Right. So the policy is mandatory. And I think that just sort of takes us out of a policy that's not mandatory, like a nonmandatory sentencing guideline. This policy is mandatory. So I – it doesn't seem to me that those cases really bear on it. The problem with this policy, from your perspective, is not that it's discretionary. It's that it was not the product of a legislative change. Can you address that? Yes, Your Honor. The issue with the policy, whether it was discretionary or mandatory, was that at the time of Mr. Brown's offenses and at the time of his sentencing, the law that changed the way that consecutive sentences were imposed and deemed completed changed. And so that is why, as applied to Brown, using the standard from Garner v. Jones from the Supreme Court, as applied to Brown, the question is whether retroactive application of the amended policy as applied to him through practical implementation had the sufficient risk of increasing the measure of punishment attached to his crimes. And that's why the Court needs to look at these circumstances as they were applied to Brown. The retroactive application of both the statutory change and the amended policy, whether mandatory or discretionary, was not in effect at the time of his sentencing. And under the old law, the sentences that he had served and completed under the old law would have been deemed completed and expired. Another way to put this is if there had been – if Mr. Brown had finished serving a sentence and he was let out of jail, not on parole, but he had finished completing his sentence and he was let out from the prison, there was a day in between the day in which he was let out and completed a new crime, there would be no question that the good time credit that he had earned on that first sentence that had allowed him to get out of jail, it doesn't make sense that the – that the Virginia parole board, because his sentences were – under Virginia law, they're required to be treated consecutively, it doesn't make sense that because of the timing of his sentences and crimes that they would have been considered one giant sentence that was capable of being resurrected and having those 23 years of good time he had earned tacked onto that sentence. Your Honor, I see my time has expired. May I briefly conclude? Yes, you may. For the reasons stated, we respectfully request this court find that Mr. Brown is entitled to habeas relief. Thank you. Thank you, Ms. Winters. Mr. Galliard? Good morning, Your Honors, and may it please the court. I am Kevin Galliard, Deputy Solicitor General of the Commonwealth of Virginia, representing respondents Karen Brown, Harold Clark, and Wendy Brown. With me today is Jordan Minot, Assistant Solicitor General. This case is a straightforward AEDPA statute of limitations case. The Supreme Court of Virginia held that Mr. Brown's State court habeas petition was not timely filed. Because the petition was not timely filed, Mr. Brown is not entitled to statutory tolling under AEDPA. Without statutory tolling, Mr. Brown's petition was untimely under the statute of limitations for AEDPA, and the district court's dismissal was proper. Counsel, can I ask you a question? It sounded from the district court opinion that you read the Virginia Supreme Court opinion or the Virginia Supreme Court order differently in front of the district court and suggested that actually the Virginia Supreme Court had not dismissed the ex post facto claim about the good time credits on timeliness grounds. Your Honor, the petition is very clear as to what it says. Sorry. Is that the position you took in the district court? Did the district court misunderstand what you were arguing there? I think the district court held that the — I know what the district court held, but the district court said that you argued that this was not done on timeliness grounds. And so I'm asking, have you changed your mind? What happened here? No, Your Honor. I don't believe that we've changed our mind. Okay. I think that we have held from the beginning that the Virginia Supreme Court order is very clear. So the district court misunderstood your position. I think that's right. And you can see that in the footnote that is in the district court's opinion, which says that regardless of whether the — of what the Virginia Supreme Court held and how it was — how the ruling went forward, that is, in fact, the petition was untimely. And so what we're saying here, Your Honor — So you did not, in fact, argue that — and I'm quoting — argue that the Supreme Court of Virginia only dismissed some of Petitioner's claims as untimely because the court provided an alternative holding regarding claims that concerned good conduct, credit, and discretionary parole. Your Honor, I believe that there are — there are two sets of claims that were — I mean, it's no big deal if you change your mind. But — but you want to stick to the idea that the district court misunderstood your argument. Your Honor, I would have to go back and look at the briefs. But I'm — I'm — what I'm telling you today is — is very clear that the Supreme Court of Virginia ruled that the entire petition was untimely. So in order to be timely filed, Mr. Brown had to submit his Federal habeas petition within one year from the date that the cause of action became — could have been discovered. And under any theory of the case here, whether it was October of 2013 or August of 2015, that claim needed to be filed in Federal court in August of 2016. How could he have discovered it in — his claim in October 2013? Your Honor — When he was out on parole and — and his good time credit had not been taken away from him yet, as far as he was aware. Yes, Your Honor. I — there — I have two responses to that. My first response is the — the claims that were actually made in the petition. If you look at the — the State court petition that Mr. Brown submitted to the State court, his counsel has very ably made it seem as if there is an ex post facto claim that was brought specifically about the revocation. But the — I would — I would give you a cite to their brief on page 9 that characterizes the claims that are in the State court petition. They say that the — Then maybe we should just look at the petition rather than characterizing what the petition says. So I would invite you to do so, Your Honor. Yes, that's what I'm doing. On pages 312 and 313 of the joint appendix is the claim that counsel points to as far as what is the ex post facto claim that is still at issue in this case. Now, keep in mind that Mr. Brown brought somewhere between 8 and 10 claims. As the district court mentions, they're somewhat overlapping and repetitive. But what Mr. Brown's counsel points to is what's claimed B in the State court petition as the ex post facto claim that is still at issue. In footnote 1 of page 9 of their brief, they say there's due process claims, there's double jeopardy claims. None of those are at issue now. So what is at issue, according to them, is claim B in the State court petition. Claim B is an ex post facto claim about the mandatory release in October of 2013. He is claiming that he is — he should have been released with only six months probation, but he was actually released with three years probation. And that is the ex post facto. The application of that policy is the ex post facto claim that he makes in claim B. So — Not the — you're saying not the revocation of his 23 years of good time credit. Correct, Your Honor. In claim B, that's correct. Well, if that's right, counsel, then the Virginia Supreme Court did not dismiss this claim on timeliness grounds. There may be a different procedural problem here, but that's not it. Your Honor, I do believe that the Virginia Supreme Court dismissed this on timeliness grounds. Well, it didn't dismiss the claim in question on timeliness grounds. You're telling me now he never raised that claim. So how could the Virginia Supreme Court have dismissed it on timeliness grounds? I want to make sure I'm understanding your question. Are you saying the claim that is in the brief about the revocation of the 20 — Yes. You do not believe that claim was dismissed on timeliness grounds. I don't believe that claim was raised. Okay. If it was raised at all in the petition, both the State court and the Federal And, Your Honor, what — the point of my argument here is it actually does not matter whether the claims accrued in October of 2013 or August of 2015. Under either trigger date, the — the petition was untimely, because he had one year from August of 2015 in order to file a Federal habeas court petition. He did not file until December of 2016. Therefore, the only way that his petition would have been timely is if it was tolled for some reason. The only argument that Mr. Brown has ever made about tolling is statutory tolling under the AEDPA statute of limitations provision in section 2244d2. In that section, it says that a — a Federal petition is tolled while a — a properly filed State court petition is pending. Mr. Brown's State court petition was never properly filed because the — the State court held that the petition, the entire petition, not some subset of the claims, but the entire petition, the language is clear, that petition was dismissed on timeliness grounds. Because it was dismissed on timeliness grounds, then it was not properly filed under — under Federal precedence. And I would point you to the Pace case from the United States Supreme Court in 2005. And was part of that entire petition that was dismissed his complaint about this 23 years being taken away from him? Your Honor, there are references to the 23 years being taken away. Okay. So, yes. So then I go back to my original question. How would he have known about that in October of 2013? Yes, Your Honor. He would not have known about that specific set of facts in 2013. But what I'm saying is that regardless of whether we think that the State court was right or wrong or Mr. Brown thinks that the State court was right or wrong, the State court dismissed the entire petition as untimely. And that is, as the Supreme Court said in Pace, the end of the matter. Whether they — No, no, it's not the end — No, no, you go ahead. It's not the end of the matter because we have to look at whether or not there was an adequate remedy available and meaningful. And you have to parse this out because you're conceding that after it was revoked and his 23 years were imposed on him, that his good time occurred, then he did file, right? After it was revoked in 2018, right? In 2015. No, it was revoked, right? Yes, in 2015. Right. So then when he filed it in the court, that was within the year, wasn't it, when he filed that? He filed a Federal habeas petition in December of 2016. So it was actually not within a year of August of 2015. That's exactly my point, Your Honor. When did they actually assess the 23 years on him? In August of 2015, Your Honor. August 2015? Yes, Your Honor. So in order for his Federal petition to be timely, it needed to be filed in August of 2016. However, he did not file it until December of 2016. So it was several months late. And the only reason that he says that his petition is timely is because of the tolling that he says he should get under Section 2244d2, which tolls when a properly filed State petition is pending in the State court. However, the State court, the Virginia Supreme Court, held that the petition was not properly filed. It held that the entire petition was untimely. Therefore, he doesn't get the tolling in that is under 2244d. And, Your Honor, I want to make very clear there's two separate analyses here. There is the analysis of the Federal statute of limitations under AEDPA, and then there's a separate analysis of procedural default rules. That analysis looks at the procedural default analysis, looks at whether there are adequate and independent State law grounds, looks at whether it's cause or prejudice, looks at manifest injustice. The Federal AEDPA statute of limitations does not do that analysis. Basically, as long as the State court, the Supreme Court has been very clear, as long as the State court held that the petition was untimely, it was not properly filed, and as the Pace case says, that is the end of the matter. This is there's not an analysis of cause and prejudice. There's not an analysis of adequate and independence. It's just the end of the matter. And I would point to the other analysis of manifest injustice. No, Your Honor. The — there are — for State procedural default analysis, there would be. And we've made those arguments in the brief, and we would stand by them. However, for the separate question of whether it was timely under the Federal AEDPA statute of limitations, the courts have been very clear. And I would like to — But I guess I think what picks up the slack, I take your point, but I think what picks up the slack is equitable tolling under AEDPA, right? That's where you would — that's where you would put the same bucket of concerns about manifest injustice and things like that. Yes, Your Honor. Equitable tolling does exist. However, there's two reasons why it should not be applied here. First is that Mr. Browns never raised equitable tolling below. He didn't raise it in his opening brief. He didn't raise it in his reply brief. This case — this Court's case in United States v. Bowman made clear that equitable tolling can be waived, as any other argument. Number two is this — the Supreme Court has been very clear — I would point you to Holland v. Florida, and then this Court's en banc decision in Whiteside made very clear that equitable tolling should only be in rare instances and extraordinary circumstances. Mr. Brown has not shown extraordinary circumstances or rare instances. He hasn't even made an argument that would fit into that category. Well, I kind of feel like maybe the argument would be if, in fact, the Virginia Supreme Court held that this claim that did not exist until 2015, that the statute of limitations started running in 2013, like, that would be sufficiently unpredictable — I mean, I don't want to use freakish because that's sort of the term of art on the other side — but that would have been so hard to predict that he could have reasonably relied on the fact that this was a timely petition in the Virginia Supreme Court. Turns out he was wrong, but he could have reasonably relied on that tolling period. I understood, Your Honor. The Supreme Court addressed this exact situation in the Pace case, and I would direct your attention to that. The Supreme Court said that in situations where a Petitioner in State court believes that their petition for whatever reason could be untimely or have some sort of concern, they should file a Federal protective petition in Federal court. This is a — a regularly followed procedural mechanism that Petitioners frequently do, and — and Mr. Brown has brought several Federal lawsuits, and so he certainly knew how to do so, if you will, Mr. Brown. Kagan. Kagan. Can I ask you just a — just back up for a minute and ask this question? I find the procedural part of this case very, very tricky. It seems to me you have a pretty good merits argument under Warren. Why lead with the procedural part? Your Honor, AEDPA has been put into effect in this Commonwealth and this country in order to protect situations exactly like this. There are — there are certain hoops that people need to be able to jump through because otherwise we would just have a multiplicity of lawsuits. But it's not jurisdictional or anything. There's no reason why reviewing court couldn't just say — couldn't go to the merits first if that were more straightforward, right? I completely understand, Your Honor, and I'm happy to turn to the merits now. No, that's okay. I was — but your argument is you think as a matter of principle it's important to enforce the merits. Yes, Your Honor. I think that the Commonwealth has an interest in making sure that these statute of limitations are enforced, and certainly my clients and the respondents do as well. But turning to the merits, Your Honor, I would point out that I think as some of the questions suggested, there certainly is the very clear fact that Mr. Brown's claim is entirely foreclosed by this Court's decision in Warren v. Baskerville. So in that case, the Court has made clear that the ex post facto clause by its terms only applies to laws. So in this situation, we have not a law, but the use of discretion subject to a certain law. The — Mr. Brown makes several arguments in his brief as — in his brief as to why — and here an argument as to why there should be a distinction between the case in Warren v. Baskerville and this case here. However, some of them are factual, which really doesn't go to the actual legal issue here. And other ones are just about the fact that the Supreme Court has changed the law over the intervening 22 years. I would suggest that the law has not changed at all. The cases that Mr. Brown's counsel cites are, for instance, United States v. Lewis from this Court, and then the Pew case in the United States Supreme Court are about sentencing guidelines cases, which are sort of a completely different beast. In fact, this Court's case in Burnett v. Fahey from 2012 makes very clear that the — there's a unique role of the sentencing guidelines that sort of — that specifically for that case distinguished United States v. Lewis, and I think for the same reason would distinguish the Pew case, which came one year after, so it was not addressed in — in the Burnett v. Fahey case. But Mr. Brown in his brief does make a couple arguments as to why Warren should be distinguished, and they really don't apply here, right? So in — in the first case — or the first argument is that the — in — in the actual revocation here, the parole board cited section 159 of the Virginia Code. However, the Virginia — or the Fourth Circuit in the Warren case, this Court in the Warren case, said that even though the section 159 was actually specifically stated in the revocation letter, that actually section 165 is the relevant section of the Virginia Code, and that's section 53.1-165. That section, which has existed the entire time Mr. Brown is in — was in prison, has made clear that the parole board always had this discretion. So really, what Mr. Brown is — is disagreeing with is not a change in the law. The law has remained the same. Mr. Brown is disagreeing with a change in the parole board's discretion that is given to — to it by the law. And in the Burnett v. Fahey case that I mentioned from 2012, this Court made clear that the — when the statutory scope of the discretion doesn't change, then there's actually no ex post facto problem here. And so, Your Honor, unless you have any further questions, we would respectfully request that you — Let me ask you a question before you go. What remedy would there be for the Supreme Court if he had timely filed after his good credits were revoked and the sentence of 23 years was imposed? What would be the remedy for the Supreme Court of Virginia? So, Your Honor, just to make sure I understand your question, you're asking if — Otherwise, you're saying that he did not timely file his petition to the Supreme Court of Virginia, correct? That's correct. So, that assumes that there's a remedy available that's adequate and meaningful. That's why we give deference, right, on 2254, because it is consistent and it's adequate and meaningful. I'm asking you, what remedy could the Supreme Court of Virginia give him? Your Honor, I want to make one thing clear just before I answer your question. You want to change my question? I'm not going to change your question, actually. Oh, okay. So, Your Honor, in Section 2254 is sort of a different analysis. We're not saying that the Court ruled on any sort of actual substantive grounds. There was a procedural timeliness bar here that then creates the situation in which it's untimely under Federal statute — Federal AEDPA statute limitations and also would create a procedural default. But your question as to what remedy would be available to him, he would file a habeas petition and then the State court could rule on that petition as far as what the claim — what claim he made. However, in this situation, he didn't file a timely petition, so there was — Well, what remedy is available? I'm — he's filed a State habeas court petition. I know that, but there is no remedy, is there? Because you can't name one. I believe — I believe that just like he's asking this Court to rule on it — Could the Supreme Court of Virginia release him? The — he is asking for a remedy of saying that his — the revocation of his good time credits is an ex post facto violation. So I assume what he's asking for — Constitutional? Is that a constitutional question? That is what — that is how he is — Mr. Brown has characterized his claim. And so if it is, in fact, a constitutional issue, I assume that the remedy he's asking for is for that good time to be — I guess the good time to be reimposed such that he wouldn't have the extra 23 years in — in jail. And I would say, Your Honor, this is — But then the Supreme Court of Virginia would say this is just a — this is a policy of the prison, so we can't do anything about it. If — if you're asking whether I think that this goes to the merits of — the strength of the merits of the ex post facto claim, I 100 percent agree with you. I think that the exact issue is that he didn't — But you didn't give him — he didn't get a say on the merits yet, right? We don't do it in the first instance. The district court didn't do it, did they? The district court did not rule on the merits. And — Well, why should this Court rule on the merits in the first instance? I would invite you not to rule on the merits. I think for that reason, we should be back in — Well, if — but if there's a constitutional question that there was no adequate — adequate remedy or meaningful review in a State court, we don't have to defer to that. So perhaps the ruling might be that this case needs to go back to the district court to consider that. Because — Well — Right. If — the matter is solely equitable remedy, really, isn't it? The best he could get is a declaratory judgment from the Supreme Court that says this is — we declare it to be a violation or something like that. What would it be? I understand, Your Honor, but I think this is exactly the reason that we're talking about the timeliness issue. Yeah, but this is not an academic thing. You're taking a — this case is particularly rather insidious because the man said, please, I don't want to leave the prison. I only have seven months to go. Am I right? And then said, no, you better leave here. As a matter of fact, we're going to charge you with trespass, and that will be the triggering violation. And so — so then 23 years, so the sword of Damocles is over his head, and then he earned that 23 years, didn't he? You don't just get that automatically. Your Honor, I think, to be clear, first of all — and I see my time is almost up. May I answer your question? Yes, certainly. So I think, to be clear, the — Mr. Brown certainly alleges that those things happened when he was released. But from my client's perspective, the Virginia statute on mandatory parole makes it mandatory. He was — he had to be released within six months of the end of his date. There's not another sort of option. I mean, he had — that's the way that the statutory scheme works. And Mr. Brown — Because he had finished his — he had finished his sentence, because he was not paroled, he maxed out. That's why it was mandatory, correct? He was released on mandatory parole. He was released on parole. Because the combination of actual time served and actual time earned. Correct. That was a total, complete sentence. Otherwise, it wouldn't have been mandatory, right? But to be fair, Your Honor, as part of the way that system works, you are released early, that's sort of the benefit that is given, on conditions. And one of the conditions is — Early? What's the early? You're released six months before your end — your end time. And so he's released six months early, and as part of that, he's on probation for a time, and then there are certain conditions that he needs to follow. Condition number one is don't violate Federal or State laws. And within four months of being released, Mr. Brown committed grand larceny and ended up back up in the system, and that's why his good time was revoked. Had he been able to end out his term of probation without violating the conditions of parole, especially condition number one of don't violate the laws, then he would have been able to be out with all that good time accrued. I see my time is up. And that would have taken him how long? Six months, you said? He was on probation for three months from the time — or, sorry, excuse me. I misspoke. Three years from the time that he was — Yeah, three years. Three years. Three years. And as part of that, as part of the deal, he just had to follow certain conditions, number one of which was do not violate the law, and he violated that within four months. Yeah, but that raises potentially all kinds of questions, perhaps constitutional questions in it, rather arbitrary in it. That means no matter what he did, as long as it was a violation of what? Law? Of Federal or State law. And did it say misdemeanor or felony? It doesn't say, does it? It doesn't say, does it? It does not, Your Honor. Well, that means if it doesn't say, it could be a misdemeanor. So if he went into a 7-Eleven and stole a piece of — a slice of bologna, he gets 23 years? Your Honor, I — Isn't that right? That is, if he is convicted of a — There's something unjust about that, isn't it? Isn't that what the Federal courts were about to look in terms of? State procedures that work to an unjust? I mean, these sentences are already draconian as they are across the board, and then 23 years? It could be a misdemeanor. You just conceded that. It is — and I'll quote you the exact language. Condition number one of a mandatory parole release is I will obey all Federal, State, and local laws and ordinances. And here Mr. Brown did not steal a slice of bologna, with due respect, Your Honor. Well, that doesn't matter what he did particularly here. But the effect is, you know, for example, he could spit on the sidewalk on Federal Veterans Hospital grounds, and that would be a violation, right? If that is a violation of Federal law, which I'm not aware of specifically, but if it was, then according to the language here, yes. But, Your Honor, the point of the — we are sort of down the road as to what the actual issue here is. Whether this is unjust or unfair, this is the system that he agreed to when he left, and then he violated it four months later, unless you have any further questions. So you say you can agree to cruel and unusual punishment? I didn't know that. Your Honor, I would say this is not cruel and unusual. I know, but you say it as if that's the end of it, the fact that he agreed to it. Is that right? It is not the end of it. I didn't think so. I just want to make sure that point. It's not the end of it. Thank you, Your Honor. All right. Thank you so much, Ms. Gallagher. Ms. Phelps. May it please the Court. I would like to start by first, I think, better answering Judge Harris's question from before. I got a little lost. So as we point out in our brief, the Virginia petition does tease out between those claims that were not filed within the October 2013 date, which stands in contrast to petitioner's claims concerning his good conduct credit and discretionary parole procedures, which they said were not cognizable under Carroll v. Johnson, a classification which actually this Court in just 2021 in Wall v. Kaiser considered the use of Carroll dismissing habeas petitions apparently misread the decision on which it relied, meaning the Carroll decision itself. I think that's the distinction that we were looking for earlier, and my brain just couldn't get there. And then I would also like to run through the dates for the federal filing. I think there was a bit of confusion about a December 2016 date. In fact, according to U.S. Code 2244, the limitation period runs from the date factual predicate of claim could have been discovered, which in a habeas petition regarding earned good time credits is the time the petitioner discovers the improper denial of credit. Again, that August 2015 date, the dates of Brown's revocation and loss of good time. His state filing in December of 2015 told his federal habeas petition on a ground that was not adequate. However, the petition was told until the Virginia Supreme Court dismissal in May of 2016, at which point the federal statute of limitations did begin to run again. However, Brown timely filed after May of 2016 in January of 2017. Therefore, Mr. Brown does ask that his ex post facto claim be heard on the merits by this Court. Thank you. Thank you, Counsel. Ms. Winters. May it please the Court. I would like to make two points on rebuttal. The first is Burnett v. Fahey, which my opposing counsel mentioned, was decided without the benefit of the Supreme Court's precedent in Pew, suggesting that Warren could be reconciled with the Lewis case from this Court in 2010. But the Burnett court relied on the assumption that the Virginia parole board had the authority to do what it did in Warren, which was revoke good time credit on an ongoing sentence. But it certainly does not reconcile that with what the Virginia parole board did in this case, which was revoke good time credit on sentences that under the old law would have been considered expired and extinguished under that second law. Second, in Pew, the Supreme Court cited Garner v. Jones for the proposition that the touchstone of the inquiry is whether a retroactive change presents a sufficient risk of increasing the measure of punishment attached to the covered crimes. There's no question here that as applied to Mr. Brown, there was a retroactive change in the measure of crimes, and the reasoning that the Warren court relied on was that there was no increase in the original measure of punishment. But that reasoning, in light of Mr. Brown's case, is not sufficient because under that old law, those sentences would have been completed, considered completed, and expired. For the reasons stated, Mr. Brown respectfully requests this Court find he is entitled to habeas relief. Thank you. Thank you, Ms. Winters. I note that you're court appointed. Mr. Carson, thank you so much for bringing these demon deacons up here and well acquitted their schools, fine reputation of the law school, and we appreciate their fine arguments. And as well, Mr. Gallagher, your able representation of the Commonwealth. We would love to come down, and I might say, too, court appointed counsel really do a great service to this court because lawyers like yourselves bring these cases and defend them, represent them, help us do the job and get through these very thorny issues. We would love to come down and greet you all, but we cannot do so in our COVID protocol. But know very much that we appreciate your being here, and we wish you well, and  Thank you so much. Thank you, Your Honor.
judges: Roger L. Gregory, Stephanie D. Thacker, Pamela A. Harris